COMMONWEALTH *vs.* ANTHONY A. LAUDATE.

Hampden.    November 5, 1962. — December 3, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Search and Seizure.   Evidence,* Competency, Illegally seized material.

Where it appeared in a criminal prosecution for being concerned in pro-
moting a lottery that police officers entered a shop of the defendant and
his partner, open to the public, and there observed in plain sight a small
pad of paper with number pool bets written on it, and that they then
obtained a search warrant and made a thorough search in the course of
which they seized the pad of paper and an unmailed, unsigned letter
written by the defendant to his partner and containing a detailed report
of number pool operations carried on by the defendant and his partner
the previous week, the search was not unreasonable and there was no
error in denial of a motion to suppress the articles seized or in admit-
ting them and evidence concerning them at the trial; there was no merit
in a contention by the defendant that the letter was a mere private
paper of evidential value which could not be lawfully seized even under
a valid warrant.

COMPLAINT received and sworn to in the District Court of
Springfield on May 16, 1960.

On appeal to the Superior Court, a motion to suppress
evidence was heard by *Goggin,* J., a District Court judge
sitting under statutory authority, and the case was tried
before him.    There was a verdict of guilty and the defend-
ant alleged exceptions.

*Manuel Katz* for the defendant.

*Socrates Geanacopoulos,* Assistant District Attorney
(*Matthew J. Ryan, Jr.,* District Attorney, with him), for
the Commonwealth.

WILKINS, C.J.    A complaint was issued by the District
Court of Springfield charging the defendant with having
aided and been concerned on May 16, 1960, in setting up and
promoting a lottery in violation of G. L. (Ter. Ed.) c. 271,
§ 7.    The defendant was found guilty and appealed.

Prior to trial in the Superior Court the defendant moved ''to suppress any and all the evidence and the fruits of any and all evidence seized by the police department as a result of an unreasonable search and seizure.'' At the hearing on the motion to suppress, police officers of Springfield gave the only testimony, which we summarize.

On May 16, 1960, three police officers, without a search warrant, entered the premises at 2000 Main Street, Springfield, in which the defendant operated a shoe shine parlor and smoke shop in partnership with one Rescia. The premises, consisting of a store and a small back room, were between six and seven feet wide and thirty-five feet in depth. Beginning in November, 1958, the police suspected that the defendant was concerned in promoting and setting up a lottery, but never observed him writing number pool or lottery bets. During that time they usually checked every day, observing traffic, but not always going upon the premises.

Upon entering the store on May 16, 1960, the officers saw one Parsons, who was not otherwise identified. They stayed in the front part of the premises and did not enter the back room. On a counter at the rear of the store about twenty feet from the front door they observed a pad of paper, two and one-quarter inches by four inches, on which were written two number pool bets. The pad and the writing on it were in plain view of one entering. As a result of observing the pad, one officer was sent to secure a search warrant. In his absence the defendant entered and was placed under arrest despite his denial of knowledge of the pad or the writing on it.

Upon return of the officer with the search warrant, the three officers made a thorough search, seized the pad of paper, as well as other papers observed for the first time under a small cardboard box, which was on a shelf under the counter. Among them was a letter, which became exhibit 2 at the trial.

The motion to suppress was denied subject to the defendant's exception.

Commonwealth v. Laudate.

At the jury trial, the police officers testified as to entering the store, observing the pad of paper, obtaining the search warrant,[1] the defendant's arrest, and the search and seizure of the other papers. The prosecution offered the pad of paper, which was admitted in evidence as exhibit 1, and the officers were permitted to testify as to the meaning of the writing on the pad. Exhibit 2 was an unmailed, unsigned letter written by the defendant to his partner, who was then in jail. It contained a detailed report of their number pool operations for the week preceding May 16. There was testimony by the officers that after the defendant's arrest they questioned him about the letter and he admitted that he had written it to his partner and that it contained a report of their number pool operations for the preceding week. The defendant excepted to the admission in evidence of the two exhibits and to the testimony of the officers concerning them.

The entry of the officers into the shoe shine parlor and smoke shop was lawful. This portion of the premises was open to the general public. While there they observed the pad with the written number pool bets which was in plain sight. There was a proper basis for the obtaining of a search warrant. This part of the case falls within numerous Federal decisions. We need cite but a few. *United States* v. *Bloom,* 6 F. 2d 584 (D. Mass.). *Smith* v. *United States,* 105 F. 2d 778 (Ct. App. D. C.). *Fisher* v. *United States,* 205 F. 2d 702 (Ct. App. D. C.), cert. den. 346 U. S. 872. The pad was lawfully seized under the search warrant.

As to the letter, the defendant contends that it is nothing more than a private paper of evidential value and could not be lawfully seized even under a valid warrant. See *Boyd* v. *United States,* 116 U. S. 616; *Gouled* v. *United States,* 255 U. S. 298, 310–311. Accepting this principle for the purposes of this argument, this was no mere letter of value only as evidence. This was a report by one partner to another covering the most recent week's operations of their

---

[1] The search warrant is not in the record, which does not disclose that it was offered in evidence below.

joint enterprise. The report gave detailed figures for the six business days of that week.[1] Such a report was essential in the continuation of the business as a going concern. That it was not in the form of a standard book of account is not decisive. Otherwise, necessary business records, if kept wholly in the form of correspondence, might be made immune from seizure. Compare *Commonwealth* v. *Dana,* 2 Met. 329, 337.

This was not an unreasonable search. The pad of paper with its recorded bets was an indication not only that an illegal lottery was being conducted but also that it was being conducted on those very premises which were the place of business of the defendant and under his control. A thorough search of those premises was not unreasonable. That search brought to light a not unforeseeable thing, namely, this report in summary of the preceding week's business.

No case involving an issue precisely like that presented by the letter has come to our attention. We have treated this case as one of a reasonable search and seizure in a place

---

[1] The letter contained the following schedule:

|  |  |  | TAKE | OFFICE | PAY OUT |
|---|---|---|---|---|---|
| LADY LIL 50¢ | 560 | MON. | 295.58 | 63.00 | 225.00 |
|  | 450 | TUES. | 133.81 | 46.00 | 0. * |
|  | 817 | WED. | 113.41 | 38.40 | 0. * |
|  | 631 | THURS. | 135.61 | 44.00 | 0. * |
| CHICKIE 15¢ MRS. WALKER 5¢ | 805 | FRI. | 142.25 | 52.00 | 90.00 |
|  | 191 | SAT. | 161.58 | 66.00 | 0. * |
|  |  | TOTAL | $982.24 | $309.40 | $315.00 |

T. 982.24   O. 309.40   P.O. 315.00   PAY 128.00   BANK O

of business under a valid search warrant. We have not rested our decision upon the right of search incident to a lawful arrest, although doubtless such an argument might be advanced.

"There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, 357. See *United States* v. *Kirschenblatt,* 16 F. 2d 202 (2d Cir.). In the present state of the decisions of the Supreme Court of the United States, which in this area we must follow if applicable, we do not venture to predict what course would be considered reasonable on the present facts. In *Trupiano* v. *United States,* 334 U. S. 699 (a five to four decision), Chief Justice Vinson, dissenting, said (page 716), "At best, the operation of the rule which the Court today enunciates for the first time may be expected to confound confusion in a field already replete with complexities." In *United States* v. *Rabinowitz,* 339 U. S. 56 (a five to three decision), the *Trupiano* case was overruled to the extent that it "requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest" (page 66). In one of the dissenting opinions, Mr. Justice Black said (page 67), "But overruling that decision merely aggravates existing uncertainty. For as Mr. Justice Frankfurter points out, today's holding casts doubt on other cases recently decided. And I do not understand how trial judges can be expected to foresee what further shifts may occur."

In one of the most recent cases, a five to four decision, *Abel* v. *United States,* 362 U. S. 217, the majority opinion by Mr. Justice Frankfurter concedes (page 235) that the decisions of that court "cannot be satisfactorily reconciled." At page 238 he says, "Documents used as a means to commit crime are the proper subjects of search warrants, *Gouled* v. *United States,* 255 U. S. 298, and are seizable when discovered in the course of a lawful search, *Marron* v. *United States,* 275 U. S. 192."

We think that the letter[1] was admissible. No controlling Federal authority requires us to overturn the rulings in the court below.

*Exceptions overruled.*

---

[1]                 ''Sunday Night
                      10.15

''Hi Partner

''I hope this letter finds you in the best of health. It was real nice to see you Saturday. You are looking good. Did you see me Saturday Night. I saw the light and I think I saw you wave your hand.

''Did you see Charlie he is doing good he is helping me spread loam in the back yard. I am trying to get it in shape. He clean the floor Thursday and it looks nice.

''Some guy came in Saturday and wanted to sell me 1,500 pockets books pack in boxes. I told him I give him 2¢ apiece for them and that we could used them. He said he will have to talk to his wife. I don't think he'll come back. Carlo here is the figures for last week.

[Here appears the schedule printed in the footnote, *supra.*]

''Well we started off last week bad but a [*sic*] least we made a little pay. Business is dropping as you can see this was the first week we drop under 1,000 for take. Carlo I hate to stop writing now but I got a splitting headache. I will finish the letter in the morning. Good night Partner.

''Monday morning Hi Carlo well I am down the store now and it is dead outside you can here [*sic*] a pin drop.

''Well a guy's coming in for a shine he got a pair of filthy shoes on, he's filthy himself.

''Carlo do you get many letters from guys.''