COMMONWEALTH *vs.* PAUL BERWICK.

Middlesex.   April 1, 1963. — May 1, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Search and Seizure. Arrest. Betting. Evidence,* Competency, Illegally seized material.

Where it appeared in a criminal proceeding that an officer, having a warrant to search an automobile, to arrest any person "present" if any gaming materials were "found in said auto," and to seize any such materials, observed protruding from the shirt pocket of the defendant as he stepped out of the automobile a slip of paper on which the officer could read numbers and words constituting memoranda of bets, the defendant was lawfully then arrested, and other similar slips and a green sheet containing data as to various horse races, then found on his person, were lawfully seized as an incident of the arrest and were competent evidence at the trial of the case.

TWO COMPLAINTS received and sworn to in the Second District Court of Eastern Middlesex on May 13, 1961.

Upon appeal to the Superior Court, a motion to suppress evidence was heard by *Hudson,* J., and the cases were heard without jury by *Tauro, J.*

*William S. Pidgeon* for the defendant.

*Ruth I. Abrams,* Assistant District Attorney (*Aaron K. Bikofsky,* Assistant District Attorney, with her), for the Commonwealth.

WILKINS, C.J.   The defendant has been found guilty on two complaints for misdemeanors.   The first is for being concerned in registering bets.   G. L. (Ter. Ed.) c. 271, § 17.

The second is for being concerned in setting up and promoting a lottery. G. L. (Ter. Ed.) c. 271, § 7. His exceptions are (1) to a denial of his motion to suppress evidence on the ground of illegal search and seizure which was heard by a judge before trial; and (2) to rulings on evidence at the trial by another judge sitting without jury.

At the hearing on the motion to suppress there was testimony by three witnesses, all called by the defendant. The clerk of the Second District Court of Eastern Middlesex, held at Waltham, testified that he had issued a warrant to search a 1953 Plymouth sedan, Massachusetts registration E82,667. The warrant, which is based upon G. L. c. 271, § 23 (as amended through St. 1953, c. 319, § 30), read: "For a warrant to enter said auto and then and there to arrest the keepers thereof and all persons then and there in any way assisting in keeping the same whether as watchman or otherwise, and all persons who are then and there found participating in any form of gaming, and all persons then and there present whether so participating or not, if any lottery, policy or pool tickets, slips, checks, manifold books or sheets, memoranda of any bet or other implements, apparatus or materials of any form of gaming are then and there found in said auto and to take into their custody all the implements, apparatus or materials of gaming as aforesaid and all the personal property, furniture and fixtures then and there found."

At the hearing on the motion to suppress, Lieutenant Sheehan of the Watertown police testified that on May 12, 1961, he went with the search warrant to the car owned by one Kinney; that in it were four people, including the defendant, a passenger, who were asked to step out of the car; that "there was nothing found in the car"; that the defendant was searched by someone; that as a result certain slips and money were found on the defendant; that "they" had a search warrant only for the vehicle, not for the defendant;[1] and that when the witness saw the defendant step

---

[1] There is no statute authorizing a search limited to a person.

out of the car, the defendant had something sticking out of his shirt pocket.

Officer Munger of the Watertown police testified that when the defendant stepped out of the car, he was three to three and one-half feet away; that the witness noticed in the left shirt pocket of the defendant a pack of slips protruding over the top of the pocket; that "he could see writing on the outside slip, series of numbers, an amount posted beside it, and there were two dates"; that the witness grabbed the defendant and asked how he could explain them; that the defendant said, "It's obvious, isn't it"; that the witness "steered" the defendant to the front of the car and told him to empty his pockets; that after the witness read the numbers from three and one-half feet, he searched the defendant; "that he did not have to search for the white papers; [and] that he [the witness] placed him [the defendant] under arrest after that."

The defendant in his brief refers only to the evidence at the trial. This was entirely by the two police officers, and included substantially everything which was testified to at the hearing on the motion to suppress. We summarize certain evidence which was given in more detail. On May 12, 1961, at 3:45 P.M. the car came out of the rear gate of a manufacturing plant where the defendant was employed. The defendant was seated in the right rear, the side on which Officer Munger was when the car stopped. When the defendant got out, he was two to three and one-half feet away from the officer. The officer observed a package of slips in the defendant's left shirt pocket, and saw "a few numbers written down with a dash and the words 'two days' at the top and an amount posted beside it." The officer could see the numbers and the words before he took the slips. The defendant was then arrested, and a green sheet and "three hundred and some odd dollars" were found on him. The slips represented "number pool play," "dog plays, horse plays." One slip had names with what appeared to be telephone numbers. Another appeared to have some form of accounting. Some slips were dated the

eleventh, and some the tenth, and represented about $53 of play. The defendant excepted to the admission in evidence of the slips and the green sheet, which was dated May 12, 1961, and contained data as to various horse races at a local track.

In the area of reasonable searches and seizures, the Federal law is paramount. See *Commonwealth* v. *Spofford,* 343 Mass. 703, 707. The Federal decisions are not always consistent. See *Commonwealth* v. *Laudate,* 345 Mass. 169, 173, and various opinions of Justices of the Supreme Court of the United States there cited. "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." *Go-Bart Co.* v. *United States,* 282 U. S. 344, 357. *Harris* v. *United States,* 331 U. S. 145, 150.

Succinctly stated, the warrant purports to authorize the holders "to enter said auto and then and there to arrest . . . all persons who are then and there found participating in any form of gaming, and all persons then and there present whether so participating or not, if any lottery, policy or pool tickets, slips . . . memoranda of any bet or other implements, apparatus or materials of any form of gaming are then and there found in said auto and to take into their custody all the implements, apparatus or materials of gaming as aforesaid . . .."

The slips and the green sheet could be found to be memoranda of bets and apparatus or materials of gaming. G. L. (Ter. Ed.) c. 271, § 27. *Commonwealth* v. *Carlson,* 331 Mass. 449, 451. *Commonwealth* v. *Pasquale,* 334 Mass. 669, 670–671. *Commonwealth* v. *Wetherell,* 340 Mass. 422, 424. Unless the slips, the character of which was "obvious" according to the defendant, were constitutionally invisible to the police officers because of being in the defendant's shirt pocket, they were plainly "found in said auto." What might have been the result if a portion of one of the slips had not been visible to, and read by, the police officer is not for present decision. The fact remains, notwithstanding the contrary contention of the defendant, that enough was

in plain view to indicate to the officer the true nature of the protruding slip. That was sufficient to permit the arrest of the defendant as present. The other slips and the green sheet were then reasonably to be seized as an incident to a lawful arrest pursuant to the warrant. *Commonwealth* v. *Laudate,* 345 Mass. 169, 172–173.

On the evidence received at the hearing of the motion to suppress, the motion was rightly denied. The substantially similar evidence was rightly admitted at the trial.

*Exceptions overruled.*