LIBERTY MUTUAL INSURANCE COMPANY *vs.* ACTING
COMMISSIONER OF INSURANCE & others.

AMERICAN EMPLOYERS' INSURANCE COMPANY *vs.* SAME.

MASSACHUSETTS BONDING AND INSURANCE COMPANY &
others, petitioners.

AMERICAN MUTUAL LIABILITY INSURANCE COMPANY &
others, petitioners.

LIBERTY MUTUAL INSURANCE COMPANY *vs.* ACTING
COMMISSIONER OF INSURANCE.

AMERICAN EMPLOYERS' INSURANCE COMPANY *vs.* SAME.

HARTFORD ACCIDENT AND INDEMNITY COMPANY *vs.* SAME.

Suffolk.    October 15, 16, 18, 1928. — November 2, 1928.

Present: CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Commissioner of Insurance. Insurance,* Against liability: motor vehicle.
*Motor Vehicle.*

The provisions of St. 1928, c. 381, § 11, did not require that classification
of risks and schedules of premium charges, established by the com-
missioner of insurance for the year 1928 only under the compulsory
automobile liability insurance law, § 113B added to G. L. c. 175 by
St. 1925, c. 346, § 4, should continue in force until the commissioner
should alter or revise them; but, under said § 113B as amended by
St. 1928, c. 381, § 6, it is the duty of the commissioner each year, on
or before September 1, to fix the rates for the subsequent year, although
it is not mandatory that this should be done within the time stated.

The commissioner of insurance, who had established a classification of
risks and schedules of premium charges under § 113B, added to G. L.
c. 175 by St. 1925, c. 346, § 4, for the year 1928 only, prepared for
filing full and complete classifications and schedules for the year 1929,
but, before September 1, 1928, resigned without having filed them.
After September 1, an insurance company sought a writ of mandamus
to compel the acting commissioner, formerly a deputy commissioner
and successor to the commissioner, to promulgate the classifications
and schedules thus prepared. *Held,* that the acting commissioner
should not be compelled to adopt the conclusions of his former superior
in office but should exercise his independent judgment and fix and
establish classifications of risks and premium charges for the year 1929.

TWO BILLS IN EQUITY, TWO PETITIONS for review of acts
of the acting commissioner of insurance with respect to rates

of compulsory motor vehicle insurance for the year 1928, and THREE PETITIONS for writs of mandamus directing the acting commissioner to act with respect to that subject. All proceedings were filed in the Supreme Judicial Court for the county of Suffolk on September 20, 1928, except the last named, which was filed on September 21, 1928.

The respective respondents demurred. By order of *Crosby*, J., the cases were ordered to be heard together on the demurrers and were reserved for determination by the full court.

*R. Clapp*, Assistant Attorney General, for the Acting Commissioner of Insurance.

*J. L. Hall*, (*M. Jenckes* with him,) for Liberty Mutual Insurance Company and others.

*F. H. Chase*, (*R. P. Baldwin* with him,) for American Employers' Insurance Company and others.

CARROLL, J. These cases, consisting of suits in equity, petitions for review and petitions for mandamus, are brought to determine the present situation of the classifications of risks and schedule of premium charges to be in force for the year 1929 under the compulsory automobile liability insurance law. The respondents contend that, as the commissioner of insurance did not by a written order, filed in his office on or before September 1, 1928, modify, alter or revise the rates made on September 1, 1927, primarily applicable to the year 1928, these existing rates continue to be in force for the year 1929. The contention of the petitioners is, that no classification of risks or schedule of premium charges is now established for the year 1929.

The respondents demurred to the bills in equity and petitions. In the consideration of the questions involved we must assume that the allegations in all of the petitions and bills in equity are true, *Granara* v. *Italian Catholic Cemetery Association*, 218 Mass. 387, 392; *Perry* v. *Hull*, 180 Mass. 547; that in the mandamus petitions, the ground on which the respondents rely is stated in the demurrers. *Finlay* v. *Boston*, 196 Mass. 267. In our opinion the rights of the parties can be fully determined under the petitions for mandamus brought by the Liberty Mutual Insurance Company,

American Employers' Insurance Company and the Hartford Accident and Indemnity Company against Arthur E. Linnell, the acting Commissioner of Insurance of the Commonwealth. We therefore consider these petitions for mandamus.

In the petition of the Liberty Mutual Insurance Company it is set out that it was the duty of the respondent to fix and establish on or before September 1, 1928, classifications of risks and premium charges; that he has neglected this duty; that he be ordered forthwith to establish these classifications of risks and premium charges to be used in the year 1929 and to file in his office a memorandum fixing such classifications and charges. The petition by the American Employers' Insurance Company is to the same effect. The petition of the Hartford Accident and Indemnity Company alleges that the then commissioner of insurance, before September 1, 1928, fixed and established classifications of risks and a schedule of premium charges to be used for the year 1929, and prepared a written memorandum of an order to that effect, but before September 1, 1928, without having filed said written memorandum, he resigned his office by a writing addressed to the Governor of the Commonwealth in which the commissioner said: "Either I must promulgate the rates as computed by me and the department, or I must resign my office . . . . If I promulgate the rates as proposed by me, I am placed in the position of defying the chief executive of this commonwealth . . . . The result is that no memorandum revising these rates will be filed by me . . . . As I view the whole matter now, this unusual situation of an underexecutive having to contest with his superiors in authority, is the result of an attempt to solve a mathematical problem by the introduction of a factor of political expediency. This is neither right nor proper." This petition further states that the classifications and charges fixed by the commissioner were full and complete; that the only act remaining to be done on September 1, 1928, in order to establish the classifications and charges for the year 1929, was the ministerial act of signing and filing a memorandum of the order; that the acting commissioner has refused to file or sign such memorandum and his failure to do so is based

solely on his misconception of his official duty and not upon any difference of opinion between him and the former commissioner as to the fairness of the classifications and charges in said memorandum of order.    The prayer of this petition is that the acting commissioner be ordered to sign and file in his office a memorandum establishing the classifications and charges as fixed by the former commissioner.

So far as material to this discussion, St. 1925, c. 345, § 2, required the insurance commissioner to examine the classifications and premium charges submitted by the insurance companies, and to determine whether the classifications were fair and reasonable and the premium charges adequate, just, reasonable and nondiscriminatory, and after a hearing to establish such classifications and charges "in connection with the registration of motor vehicles . . . for the first year to which section one A of said chapter ninety shall apply."    This was to be done on or before September 1, 1926. Duly certified copies of the classifications and charges were to be furnished the insurance companies, "and one copy of each shall be filed by said commissioner in his office as a public record."    Under this section the effective date was September 1, 1926, and was to apply to the first year, that is, the year 1927.    By St. 1925, c. 346, § 4 (which added § 113B to G. L. c. 175), the commissioner was given authority to "modify, alter or revise" the classifications or any part thereof or to "increase or decrease any such premium charge, whenever he deems it proper, expedient or necessary."    But such order shall apply only to classifications or charges "in respect to such policies" to be issued "in connection with the registration of motor vehicles" for the subsequent year and "shall be filed in the office of the commissioner on or before September first of the year when the order is made."    As we construe these statutes, the commissioner was not only authorized to establish classifications and rates, but he was to perform this duty on or before September first; and it was expressly stated that such order was to apply only to classifications and charges for the year subsequent to September first.

On September 1, 1926, the commissioner, in accordance

with the law, by written order fixed the classifications and charges for the year 1927; and on August 31, 1927, he approved and filed in his office a written order establishing classifications and charges for the year 1928. It is stated in the petition and admitted by the demurrer that "Said classifications of risks and schedule of charges were, by the order itself, established for the year 1928 only." When St. 1928, c. 381, was passed, all previously established classifications and charges were of limited duration. Those for the year 1927 had expired, and those for the year 1928 were applicable only to the year 1928 registrations and will expire on December 31, 1928. St. 1928, c. 381, was declared to be an emergency law, necessary for the immediate preservation of the public safety and convenience. Section 11 enacted that nothing in § 6 of the statute shall be construed to affect the provisions of chapter 345 of the acts of 1925 or the classifications or charges established thereunder "or the classifications of risks and schedule of premium charges in force on the effective date . . . and such classifications and charges shall continue in force until modified, altered or revised" in accordance with G. L. c. 175, § 113B.

It is the contention of the respondent that under this statute the rates and classifications already in force were to continue in force until the commissioner should alter or revise them. We do not agree with this contention. Those in force on June 11, 1928, when the statute took effect, were established by virtue of St. 1925, c. 346. These rates and classifications were to apply only for one year. It was not the intention of the Legislature that the rates should be fixed and the classifications revised by itself: they were to be examined by the commissioner, and, if approved by him, he was to establish them by September 1 for the following year. The Legislature did not intend to extend the term for existing rates or to enact that rates already established should continue for a longer period than one year, as indicated by the acts of the commissioner and the law existing when these rates were fixed. In fact the entire plan of compulsory insurance under the statute was upon a yearly basis in accordance with the terms of the registration of motor

vehicles.  As was said in *Opinion of the Justices*, 251 Mass. 569, at page 608, "The maximum period of insurance for a motor vehicle under one policy or bond is the term of registration, which does not exceed one year"; and in St. 1928, c. 381, § 6, it is clearly shown that the commissioner was to fix the rates and by no order should he alter or modify the rates "during the year in which the order is made," and the order was to be filed on or before September 1.  Whatever the intent of the Legislature was in passing the emergency legislation of 1928, it was not its purpose to take away from the commissioner his authority to fix rates and to perform this duty on or before September 1 of each year.

In the *Opinion of the Justices, supra*, at page 611, it was said: "Reasonable presumptions are indulged in favor of the constitutionality of any act of a public body brought before the courts for review.  But there must be some provision for judicial examination of rates when fixed by public authority."  Provision for the review of the commissioner's action in establishing rates is made in St. 1928, c. 381, § 6. There is, however, nothing in § 11 of the statute giving this right of review.  And if the rates already established for the year 1928 are to continue without further action of the acting commissioner, it is at least doubtful if the statute so construed is constitutional.  The rates were established in 1927 for the year 1928.  To say that these rates continue for another year would probably leave the parties without any right to contest in the courts the fairness of these rates for the subsequent year.  In this connection it is to be remembered that the compulsory automobile liability insurance law was to some extent an experiment.  Fair, just and reasonable rates to the insured and the company could not be determined with accuracy at once; it was therefore thought wise to establish the rates for each year, and to depend on experience, observation, and statistics to determine future rates.

It was the duty of the commissioner each year, on or before September 1, to fix the rates for the subsequent year.  But it is not mandatory that this should be done within the time stated.  Under St. 1925, c. 345, § 3, if rates are revised on

review by the court, the commissioner is given authority to establish new rates in accordance with the decree of the court even after September 1. The time fixed for establishing rates was directory and not mandatory, otherwise it would be within the power of the commissioner to defeat the operation of the statute; this would be contrary to the purpose of the Legislature in enacting the legislation.

The Hartford Accident and Indemnity Company in its petition for mandamus asks that the writ of mandamus issue against the acting commissioner, commanding him to sign and file the memorandum of the order made by the commissioner of insurance before he resigned his office. The contention of this company is that the filing of the order already made is a mere ministerial duty, and that in view of the allegations of the pleading and the resignation of the insurance commissioner, as shown in his letter of resignation already referred to, the writ should issue. There is force in this contention. On the other hand the responsibility of establishing rates is with the acting commissioner. He is called upon to exercise his best judgment, and if the rates established by him are unfair, unjust or in violation of the statutes, the parties interested have the right to resort to the court under the statute giving them this right. In these circumstances we do not think the writ as prayed for by the Hartford Accident and Indemnity Company should issue.

It follows that the acting commissioner should forthwith fix and establish classifications of risks and premium charges for the year 1929. If he believes the rates made by the commissioner before his resignation are in compliance with the statute (his letter of resignation shows the rates were computed by him and the department), then the acting commissioner should at once file these rates. If, however, he now believes these rates are not just, he should forthwith establish the rates in accordance with the statute. The demurrers to the petitions for mandamus are overruled, and the writ is to issue as prayed for in the case of the Liberty Mutual Insurance Company against the acting commissioner and in the case of the American Employers' Insurance Company against the acting commissioner. In the case of

Hartford Accident and Indemnity Company against the acting commissioner the petition for mandamus is denied. The petitions for review are denied.  The suits in equity are to stand continued.

*So ordered.*