COMMONWEALTH *vs.* GEORGE DIXON.

Suffolk. February 7, 1967. — April 27, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Fire. Real Property,* Investigation of fire. *Arrest. Search and Seizure.*

At the trial of an indictment for wilfully and maliciously burning a dwelling house, rulings by the judge after a voir dire that a police officer had probable cause to arrest the defendant without a warrant and that the arrest was lawful were right where it appeared that the officer had been summoned to the defendant's room in an apartment house by inspectors of the arson squad of the city's fire department on the day after a nonaccidental fire in the building and had been told what the inspectors had observed in it and particularly in the defendant's room, entry to and inspection of which had been granted "freely, voluntarily and intelligently" by the defendant and was specifically authorized and directed by G. L. c. 148, § 4, that with the defendant's permission certain articles which could have been found to have been used in the preparation for and execution of the crime were shown to the officer, and that he, reasonably believing that the defendant had committed the crime, thereupon made the arrest; and seizure of such articles was law-

ful as incidental to the lawful arrest, and it was proper to deny a motion to suppress them.

INDICTMENT found and returned on May 6, 1966.

The case was heard in the Superior Court without jury by *Bolster, J.*

*Karnig Boyajian* for the defendant.

*William J. Doyle,* Assistant District Attorney, for the Commonwealth.

KIRK, J. The defendant, having waived his right to trial by jury, was found guilty by the judge of wilfully and maliciously burning a dwelling house (G. L. c. 266, § 1) at West Concord Street, Boston, on April 27, 1966. The case, tried subject to G. L. c. 278, §§ 33A–33G, is before us on appeal with assignments of error.

We summarize the evidence in light most favorable to the Commonwealth. One Amado owned two adjoining buildings at 132–134 West Concord Street. Both buildings were used for apartments and were separated by a red brick fire wall which was lathed and plastered on both sides. The defendant Dixon lived in room No. 10 on the third floor of the building at 132 West Concord Street (132). He was seen leaving the building at 9 P.M. on April 27. At 9:10 P.M. an alarm was sounded. A second alarm followed at 9:11 P.M. Eight pieces of fire apparatus responded. The fire fighters entered the building at 134 West Concord Street (134), but were told by someone that the fire was in 132. All left except Lieutenant Ahern who, accompanied by some civilians, was shown a closet in room No. 5 on the third floor of 134. Through the cracks in the fire wall of the closet flames could be seen in a room in the abutting building (132). The fire was behind the plaster in room 5. The drawers of a bureau in the closet in room 5 were pulled out. Fire belched forth. The drawers were closed again. The fire was extinguished in less than an hour. The bureau, which was nailed to the wall, was then torn out. A round hole through the brick fire wall behind the bureau was revealed.

The evidence resulting from the investigation which the arson squad began the next morning warranted the following findings: The closet in room 5 at 134 and the closet in room 10 at 132 had a common fire wall. The closet door in room 10 was secured by four nails. The door was opened by a hammer provided by Dixon. Two holes had been bored through the fire wall of the closet in room 10 by an electrically driven bit. Blown out fuses in the building were traced to Dixon's room. One hole, waist high, had toilet tissue stuffed into it. The hole had "real charring, real burning" around it. A drill and bits (two) with red brick dust on them were in Dixon's room. One of the bits fitted the waist high hole in the closet. In all there were five holes in Dixon's room. There were signs of burns around three of the holes. Another hole was covered by a wall picture. The fire was not accidental; it had been started by igniting toilet tissue, impregnated with flammable liquid, which had been inserted into the waist high hole drilled into the closet fire wall. The fire had extended to the ceiling of room 5 of 134 and to the fourth floor of 132.

There was also evidence that Dixon had exclusive control of room 10 on the third floor of 132; he had the only key to it. There were no holes in the walls when Dixon became the occupant.

Dixon's assignments of error arise from the denial of his motion that certain tangible evidence, allegedly obtained in violation of his constitutional rights, be suppressed.

A voir dire was held. The judge made findings of fact (see *Commonwealth* v. *Cook,* 351 Mass. 231, 234) which we summarize. On the morning of April 28, 1966, Inspectors Lee and Boyd of the arson squad of the Boston Fire Department, accompanied by Amado, went to room 5 on the third floor of 134 and there saw a hole through the brick fire wall to a room in the abutting building. They then went to room 10 at 132 where Lee knocked on the door. When Dixon appeared, Lee showed his credentials, told him that they were inspectors of the arson squad investigating the fire, and asked permission to inspect the room. Permis-

sion was granted "freely, voluntarily and intelligently" by Dixon. The inspectors made observations (heretofore mentioned) and formed the opinion that Dixon may have started the fire. At Lee's direction, Boyd summoned Sergeant Connolly of the Boston Police Department who arrived promptly and was told of their observations. With Dixon's permission certain articles were shown to Sergeant Connolly who then, in the reasonable belief that Dixon had committed the felony, arrested him. There was no police interrogation of Dixon and he was informed between 11 A.M. and 11:30 A.M. of his right to have the advice of counsel. Sergeant Connolly applied for and obtained a search warrant covering the articles shown to him and admitted in evidence. These included the electric drill and bit, a shotgun shell, a tin can containing a sulphur compound and a homemade heating coil.

The judge ruled that the arrest of Dixon was lawful, that the application and affidavit for the search warrant were sufficient, and that the warrant was lawfully issued and executed. The motion to suppress the tangible evidence was denied. There was no error.

The entry of the inspectors into Dixon's room was lawful on the ground that it was expressly permitted by Dixon. It was also lawful on the additional and independent ground that the entry was specifically authorized and directed by G. L. c. 148, § 4. See *Commonwealth* v. *Hadley,* 351 Mass. 439. A wilful breach of this duty by the inspectors is punishable under G. L. c. 148, § 6. That probable cause existed for the arrest of Dixon without a warrant for the crime of arson requires no amplification. *Commonwealth* v. *Holmes,* 344 Mass. 524, 525. No basis appears for questioning the judge's determination that the search warrant, pursuant to which the articles were seized, was validly issued and executed. Apart from the search warrant, the seizure of the articles, all of which could have been found to have been used in the preparation for and execution of the crime, and their introduction in evidence, were lawful as incidental to a lawful arrest. *Commonwealth* v. *Giacomazza,* 311 Mass.

456, 470, and cases cited. *Commonwealth* v. *Cataldo,* 326 Mass. 373, 377. *Commonwealth* v. *Holmes,* 344 Mass. 524, 525. *Harris* v. *United States,* 331 U. S. 145, 150–155. *United States* v. *Rabinowitz,* 339 U. S. 56, 60. *Abel* v. *United States,* 362 U. S. 217, 234–238.

There is no merit to Dixon's contentions that the fire department photographer was without authority to take photographs of rooms 5 and 10 of the premises or that the State police chemist was without authority to take articles in Dixon's room for examination.

*Judgment affirmed.*