COMMONWEALTH *vs.* WALLACE G. WILBUR.

Plymouth.    November 6, 1967. — December 7, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Search and Seizure. Constitutional Law,* Search and seizure, Assistance of counsel, Admissions and confessions, Self incrimination. *Practice, Criminal,* Assistance of counsel. *Larceny.*

A search warrant authenticated by the signature of an assistant clerk and the seal of a District Court from which it was issued was not invalidated by lack of a teste. [380–382]
Evidence of statements made by a uniformed law enforcement officer after his arrest on a criminal charge was not rendered inadmissible at

his trial, even if the principles formulated in *Miranda* v. *Arizona*, 384 U. S. 436, were applicable, by the fact that in an otherwise adequate warning of his rights given him prior to the statements he was not told that counsel would be appointed if he were indigent, where there was every indication that he was able to employ an attorney if he wanted one and the omission from the warning was "harmless beyond a reasonable doubt." [383–384]

There was not an improper comment, violative of art. 12 of the Declaration of Rights of the Massachusetts Constitution or G. L. c. 233, § 20, Third, as to failure of the defendant to take the stand at the trial of indictments for larceny where, in a charge to the jury including a specific instruction that the defendant had a constitutional privilege not to testify and the jury could not draw an unfavorable inference from his failure to take the stand, the judge said that possession of stolen property by a defendant soon after a theft is "presumptive evidence of guilt" of stealing it "if no explanation is given, or an unsatisfactory account is given." [384–385]

NINE INDICTMENTS found and returned in the Superior Court on May 13, 1965.

Motions to suppress evidence were heard by *Collins*, J. The cases were tried before *Hudson*, J.

*Manuel Katz* for the defendant.

*A. Stanley Littlefield*, Assistant District Attorney, for the Commonwealth.

CUTTER, J.  Wilbur was employed by the Commonwealth as a "natural resource officer." See G. L. c. 21, §§ 1, 6, 6A–6E, as amended.  He was convicted under nine [1] separate indictments for breaking and entering summer dwellings in the Plymouth and Wareham area with intent to commit larceny and for larceny.  The trial was conducted under G. L. c. 278, §§ 33A–33G, as amended.  Wilbur appealed.  Further facts are stated in connection with particular assignments of error.

1. Prior to trial Wilbur moved to suppress certain evidence obtained by searches which he claimed were "unreasonable and in violation of" his constitutional rights. At the hearing on the motion, the following facts were found.

Wilbur operated an antique shop known as the Witch's Brew in North Dartmouth, about thirty miles from his

---

[1] In three other indictments charging the same two offences, the trial court directed verdicts of not guilty.

house in Plymouth. On Sunday, March 21, 1965, Trooper Waterhouse of the State police requested Wilbur to go to the North Dartmouth State police barracks. Wilbur proceeded toward the barracks in his automobile followed by Waterhouse and another officer in a police vehicle. On the way, Waterhouse received a radio call from his superior, Lieutenant Harrington, asking that they meet him at the Witch's Brew. This request was relayed to Wilbur.

Several days earlier on two separate occasions two of the alleged victims of the thefts had visited the Witch's Brew, and, from the sidewalk through the glass front of the shop, had observed some property belonging to them. On this evidence, on March 19, 1965, Trooper Waterhouse obtained three search warrants (from the Third District Court of Bristol) authorizing a search of the Witch's Brew, and on March 20, 1965, obtained an arrest warrant for Wilbur from the Fourth District Court of Plymouth.

When Wilbur and Waterhouse arrived at the Witch's Brew, Lieutenant Harrington had these warrants in his possession and handed them to Wilbur. Lieutenant Harrington warned Wilbur of his right to counsel, his right to make a telephone call to counsel or friends, his right to remain silent, and that anything he said might be used against him in court. Lieutenant Harrington then asked Wilbur to admit them to the shop. Wilbur replied, "It's all right with me, but I don't have the key." Thereupon, Lieutenant Harrington went to a side door, which "was slightly ajar but wired from the inside with one strand of copper wire wound around a nail." He pushed open the door and, with other police officers, followed Wilbur inside.

Within one hour and one half after the defendant's arrest, the officers seized some of the allegedly stolen property. More stolen property was seized at the Witch's Brew during the months following Wilbur's arrest under additional search warrants obtained from the Third District Court of Bristol after other victims had identified property seen through the window of the store as belonging to them.

The judge who heard Wilbur's motion to suppress ruled among other things: (a) Wilbur was lawfully arrested at 10:30 A.M. on March 21, 1965, on the street immediately in front of the Witch's Brew. (b) The search of the Witch's Brew on March 21 and the seizure of stolen property described in the three warrants given by Lieutenant Harrington to Wilbur were incident to a lawful arrest.[2] (c) All search warrants issued by the Third District Court of Bristol were defective because they lacked the teste of the first justice of that court.

Reasonable searches may be made without a warrant if incident to a lawful arrest. *Commonwealth* v. *Holmes,* 344 Mass. 524, 525–526.[3] This arrest took place in the immediate vicinity of, and in front of, the Witch's Brew which exhibits show to be a small glass structure, little more than a shed. Its walls consisted chiefly of large windows such as are usual in a greenhouse. Much of the interior appears to have been visible from outside the building. The interior was not well secured. It seems probable that the searches were so close in place and time to Wilbur's arrest that they were incidental to it within the cases cited (fn. 3). This we need not decide for the evidence was admissible on another ground.

With respect to all the contents of this structure seized and admitted in evidence, search warrants had been issued by the Third District Court of Bristol. We are not bound by the reasons given for the ruling by the judge (see *Randall*

---

[2] Wilbur's motion sought the suppression of: (a) everything seized in the Witch's Brew on or after March 21, 1965; (b) all observations and photographs made within the Witch's Brew on March 21, 1965; (c) all admissions made there by Wilbur; and (d) all observations made from within or without the Witch's Brew after March 21, 1965. Except for the articles seized incident to the lawful arrest, the motion to suppress was allowed as to all articles seized under warrants issued by the Third District Court of Bristol as well as to all evidence of observations of them which took place inside the shop.

[3] Cases which indicate what searches may be regarded as incidental to arrest include *Commonwealth* v. *Dixon,* 352 Mass. 420, 423, and *United States* v. *Rabinowitz,* 339 U. S. 56, 60–64 (search of the desk and file cabinets in one room where arrest occurred). See *Commonwealth* v. *Laudate,* 345 Mass. 169, 172–173; *Commonwealth* v. *Jacobs,* 346 Mass. 300, 310; *Commonwealth* v. *Ballou,* 350 Mass. 751, 756; *Commonwealth* v. *Bowlen,* 351 Mass. 655, 657–658. Cf. *Commonwealth* v. *Rossetti,* 349 Mass. 626, 633–634; *Preston* v. *United States,* 376 U. S. 364, 367; *Stoner* v. *United States,* 376 U. S. 483, 486–487; *James* v. *Louisiana,* 382 U. S. 36, 37.

v. *Peerless Motor Car Co.* 212 Mass. 352, 384; *Young* v. *Duncan*, 218 Mass. 346, 351) who heard the motion to suppress. We think that he erred in ruling that these warrants were not valid because they lacked the teste of the first judge of the District Court. The searches were valid if made pursuant to a valid warrant.

The presence of the teste is directed by Part II, c. 6, art. 5, of the Constitution of the Commonwealth,[4] if a search warrant is a "writ" as the term is used in art. 5. A more specific provision appears in G. L. c. 218, § 6 (as amended through St. 1964, c. 638; see later amendments through St. 1966, c. 699, § 6), which reads, in part, "Citations, orders of notice, writs, executions and all other processes issued by the clerk of the court shall bear the teste of the first justice thereof." The section deals primarily with the justices and special justices of such courts and their compensation. No provision for a teste appears in G. L. c. 276, §§ 1, 2, 2A, 2B, 2C (as amended or inserted by St. 1964, c. 557; see later amendment of § 2B by St. 1965, c. 384). Indeed, the form of warrant specified in § 2A omits any teste whatsoever.

We interpret both the constitutional provision (fn. 4) and c. 218, § 6, as directory only (see *Liberty Mut. Ins. Co.* v. *Acting Commr. of Ins.* 265 Mass. 23, 28–29; *Monico's Case*, 350 Mass. 183, 185–186) and not as a mandatory requirement, the absence of which destroys the validity of a warrant otherwise correctly issued. The teste relates to a matter of form and not of substance. As Chief Justice Parker said in *Ripley* v. *Warren*, 2 Pick. 592, 595, "[N]othing can be more precisely mere matter of form than the *teste* of a writ, although by some unaccountable means it was thought important enough to be provided for in the

---

[4] Article 5 reads, "All writs issuing out of the clerk's office in any of the courts of law, shall be in the name of the Commonwealth of Massachusetts: they shall be under the seal of the court from whence they issue: they shall bear test of the first justice of the court to which they shall be returnable, who is not a party, and be signed by the clerk of such court." Article 14 of the Declaration of Rights (dealing with the regulation of the right of search and seizure) provides, among other things, that "no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

constitution of the state. We all know that in practice it is considered wholly insignificant; for the name of the proper officer may be inserted after the writ has been issued by the clerk, a blank being left for that purpose; or the name, if printed, may be erased and another inserted by the party . . . ." In the *Ripley* case, the court (p. 596) treated the writ, "though originally defective," as agreed to by the then defendant who made no point of the matter until late in that litigation. The teste of a writ may be amended at any stage in a proceeding. *Nash* v. *Brophy,* 13 Met. 476, 478. See *Austin* v. *Lamar Fire Ins. Co.* 108 Mass. 338, 339–341 (clerk's signature omitted from writ). See also *Commonwealth* v. *Boon,* 2 Gray, 74, 75.

The record does not suggest that any interest of Wilbur was affected by the absence of the teste. If he had questioned the authenticity of the warrant on that account, when it was shown to him, it could have been amended on the spot in this insignificant respect, at least with authorization to do so from the clerk who issued it. Examination of the original warrants shows that they were adequately authenticated by the signature of the assistant clerk and by the impressed seal of the court.

The use of search warrants is desirable to protect important individual interests. They, however, and the affidavits upon which they are based, must be read "in a common-sense way rather than technically." *United States* v. *Ventresca,* 380 U. S. 102, 108–109, 111–112. See *Commonwealth* v. *Rossetti,* 349 Mass. 626, 632, n. 5; *Commonwealth* v. *Cuddy, ante,* 305, 308; *United States* v. *Bowling,* 351 F. 2d 236, 237 (6th Cir.). We treat the absence of the teste as of no legal significance,[5] especially in circumstances such as those before us where it is apparent that omission of the

---

[5] Our view is consistent with analogous decisions elsewhere. See *United States* v. *Matellian,* 31 F. R. D. 233, 234 (D. Mass. — correction of date in warrant); *People* v. *DeGeovanni,* 326 Ill. 230, 236–237 (warrant did not disclose the title of the issuing officer); *Spitcaufsky* v. *Hatten,* 353 Mo. 94, 114 (constitutional provision concerning attestation of process "more directory than mandatory"); *Parsons* v. *Swett,* 32 N. H. 87, 89; *Burks* v. *State,* 194 Tenn. 675, 678–679 ("technical irregularity" in warrant not to "defeat the ends of justice").

teste was an inadvertence which occurred when the warrant blanks (then currently in use by the court) were printed.

2. The trial judge admitted evidence that, immediately after his arrest, Wilbur made statements which could be found to have constituted admissions.[6] It is principally argued that Wilbur's constitutional rights were violated by some brief interrogation of, and short conversations with, Wilbur after his arrest, while he and the others were within the Witch's Brew on March 21, 1965, the day of the arrest. Principal reliance is placed on *Miranda* v. *Arizona*, 384 U. S. 436, 467–479, decided June 13, 1966. Wilbur's trial began on September 21, 1966. We assume (without deciding) that the principles formulated in the *Miranda* case may apply to this trial, even though such interrogation as there was took place long before the *Miranda* decision. *Johnson* v. *New Jersey*, 384 U. S. 719, 721. Cf. *Commonwealth* v. *Morrissey*, 351 Mass. 505, 508–512; *Commonwealth* v. *Rogers*, 351 Mass. 522, 528–531.

In the *Miranda* case, at p. 479, it was stated that a person arrested "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." The judge who heard the motion to suppress found that Lieutenant Harrington warned Wilbur "of his right to counsel, and to telephone counsel or friends and that anything he might say might be used against him in court." He was told he could use a telephone in the police barracks nearby, for there was no

---

[6] The admissions do not appear to have been very substantial. They included statements (1) that the Witch's Brew "was his [Wilbur's] establishment," (2) that he had recently sold the contents and, (3) that he could not recall from whom he had purchased various items found in the shop. Wilbur also, while in the shop accused theft victims there present, who had claimed ownership of items in the shop, of lying. He also denied ever having been near the house of one or more of such house owners. During the stay in the shop, Wilbur became violent, profane, and abusive. There was no evidence of any improper police pressure upon Wilbur. The questioning was neither insistent nor long continued.

telephone in the shop. The only element of the *Miranda* case warning not given was "that if he . . . [could not] afford an attorney one . . . [would] be appointed for him."

We hold that this omission is not material here and that the warning was adequate. Wilbur was in the uniform of a natural resource officer employed by the Commonwealth. He admitted that he owned the Witch's Brew and had just sold its contents. There was no reasonable basis for suspecting that he was indigent and every affirmative indication that he was in a position to employ counsel if he wanted an attorney. He was a law enforcement officer who (see G. L. c. 21, § 6B, as amended through St. 1964, c. 524, § 2) could "exercise . . . all the authority of police officers and constables, except the service of civil process." He cannot be regarded as ignorant of the rights of a person under arrest.[7] We think the warning principles announced in the *Miranda* case must be applied reasonably and with common sense and do not constitute an arid, ritualistic formula to be administered inflexibly. We assume that the principles are designed to achieve the substance of protection of defendants requiring protection and not to penalize (for minor and nonprejudicial failure to adhere to a precise formula) law enforcement officials intelligently attempting in good faith to afford arrested persons considerate treatment and due process of law. Particularly must this be so, when action which occurred before the *Miranda* decision (so that police officers could not anticipate what was later to be decided), is being considered in connection with a trial begun after that decision.

At least one other court considering the problem has reached a similar conclusion, where there plainly was no prejudicial effect from failure to inform a defendant that, if indigent, counsel would be appointed for him. *State* v. *Gray*, 268 N. C. 69, 80–83. We think that any incompleteness in the warning given to Wilbur was, on the facts in this

---

[7] Although it may not be material, we take note that he is now represented by competent and experienced counsel.

record, "harmless beyond a reasonable doubt." See *Chapman* v. *California*, 386 U. S. 18, 24.[8]

3. The trial judge gave a full and accurate charge. Among other things, he instructed the jury that, where there is possession of stolen property by a defendant soon after a theft, and the possessor "offers no explanation as to his possession, there is a presumption that he stole it." Such possession, he said, "if no explanation is given, or an unsatisfactory account is given, is presumptive evidence of guilt."[9] To this portion of the charge Wilbur's attorney made an objection which we assume to have been an exception, although it is by no means clear that an exception in fact was saved. This objection was not based upon the contention that the judge had "misstated the Massachusetts law on this subject" but on the ground that the charge violated the constitutional privilege "which enables a defendant to remain silent in the face of any accusation." The judge charged specifically that Wilbur had a constitutional privilege not to testify and that "the fact that Wilbur did not take the stand does not give you [the jury] the right to draw an unfavorable inference therefrom."

The charge concerning the presumption which arises from the unexplained possession of recently stolen goods was consistent with our cases. *Commonwealth* v. *Grace*, 265 Mass. 119, 123–124. *Commonwealth* v. *Torrealba*, 316 Mass. 24, 29. *Commonwealth* v. *Brant*, 346 Mass. 202, 205. Cf. *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (where it was not established that the defendant ever had any stolen property in his possession). Similar presumptions or permissible inferences were upheld in *Yee Hem* v. *United States*, 268 U. S. 178, 183–185, and *United States* v. *Gainey*, 380 U. S. 63,

---

[8] We, of course, do not suggest that police officers should not give the full *Miranda* case warning merely because they know a particular defendant to be abundantly solvent. On the contrary, we think that the only safe course for law enforcement officers is to apply the rules of the *Miranda* decision, even if in the particular case attention to some aspect of those rules may seem unnecessary as a practical matter.

[9] He also said that "the mere possession of stolen goods . . . gives you the right to draw an inference that they were stolen . . . and particularly so when you . . . have not an explanation, a satisfactory explanation, as to how the defendant came in possession of them."

65–68, 70–71.   See *Commonwealth* v. *Williams*, 171 Mass. 461, 462–463.   Cf. *United States* v. *Romano*, 382 U. S. 136, 139–144.

We do not view the charge as in any sense an improper comment on Wilbur's failure to testify in violation of art. 12 of Part I of the Constitution of the Commonwealth, or of G. L. c. 233, § 20, Third, provisions which long antedated the decision in *Griffin* v. *California*, 380 U. S. 609, 612–615. See *Opinion of the Justices*, 300 Mass. 620, 624–626.   The presumption or inference of guilt arising from unexplained possession of recently stolen goods may be overcome by evidence other than that of the defendant.   Indeed, facts proved by the prosecution may be sufficient to overcome the presumption or to preclude any adverse inference.   A proper and reasonable charge, like the charge before us, concerning the principle cannot be distorted into forbidden comment on a defendant's failure to take the stand.   The pertinent authorities are comprehensively discussed in *Anglin* v. *State*, 244 Md. 652, 656–663.

*Judgments affirmed.*