**Ronald FISHER, Petitioner, Appellee,**

v.

**Palmer C. SCAFATI, etc., Respondent, Appellant.**

**No. 7705.**

United States Court of Appeals, First Circuit.

March 4, 1971.

Leonard E. Gibbons, Asst.Dist.Atty., Western District, with whom Matthew J. Ryan, Jr., Dist.Atty., Western District, was on the brief, for appellant.

Richard J. Rubin, New York City, with whom Gainsburg, Gottlieb, Levitan & Cole, New York City, was on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

We face the unpleasant task of deciding whether a state trial court's findings, subsequently affirmed, Commonwealth v. Fisher, 1968, 354 Mass. 549, 238 N.E.2d 525, that a defendant was given timely and complete *Miranda* warnings [1] were properly disregarded by the district court on a petition for habeas corpus, and the further question whether the district court's findings to the contrary should themselves be affirmed. The issue of warnings is vital as petitioner, hereinafter the defendant, was convicted of murder following a trial in which his oral and written con-

---

1. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1662, 16 L.Ed.2d 694.

fessions prominently figured. There is no claim that they were unlawfully obtained other than by the failure of the police to observe the requirements of *Miranda*, decided a few weeks before the interrogation in question and concededly applicable.

The district court's obligation to review the state court proceedings for inadequate factfinding was made plain in Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. Following the procedure there outlined, having determined on the basis of the state record that the state court conclusions were not adequately supported, the district court conducted its own hearing. It received the oral testimony of one witness, Captain, formerly Lieutenant, Shea, the police detective who had been in charge of the investigation, in addition to the recorded state court testimony of that witness and of two other police detectives. It expressly declined to consider the defendant's own testimony. Thereafter it made extensive findings. Concededly, no warnings were given at the outset of the interview in question. The district court found the entire interrogation custodial. It further found that even when, in the course of the questioning, certain warnings were given, they were incomplete. It accordingly ordered the conviction set aside. The Commonwealth appealed. We remanded for an additional finding of fact as to what warnings had been given prior to the time that a full oral confession was obtained, after the interrogation. The district court then found that full warnings had still not been given at that time.

 Procedurally, two issues are involved. The first is whether the district court was warranted in conducting a hearing, as against accepting the state court's determination. In order to hold that it should not have held a hearing we must conclude not just that it was obliged to find the state findings "fairly supported by the record," 28 U.S.C. § 2254(d) (8) (Supp. V, 1970), so that a hearing was not mandatory, but that holding a hearing was an abuse of discretion. Townsend v. Sain, ante, at 318, 83 S.Ct. 745; Brown v. Allen, 1953, 344 U.S. 443, 463–464, 478, 506, 73 S.Ct. 397, 97 L.Ed. 469 (opinions of Reed and Frankfurter, JJ.). The defendant bore the burden of obtaining a hearing below, but the Commonwealth, on appeal, must show such abuse. In terms of the present case, if, as will appear, the great weight of even the Commonwealth's evidence indicated lack of adequate warnings, the district court was warranted in reopening to consider the question de novo. The second issue is whether the district court adequately found the facts on the basis of the record as a whole, including its evidentiary hearing. Here defendant originally had the burden as a result of section 2254(d). However, the Commonwealth, having lost, is now obliged to meet the ordinary requirement of showing error.[2]

Turning from procedure to substantive facts, again there were two issues to be resolved: the timeliness, and the completeness, of the warnings. The Commonwealth is obliged to succeed on both.

**I**

With respect to timeliness, the facts are these. The police having discovered on July 7, 1966 that one Carolyn Willis had been murdered, initiated an intensive investigation. The defendant was

2. It has been suggested that habeas procedure permits a single district judge to make findings offsetting the determination of the entire state supreme court. This is a misapprehension. The state appellate court has not made findings; it has merely held that those of its trial court were supportable. It is true that the ultimate findings, on a new record, by the federal trial judge will prevail over those of the state trial judge, assuming the federal appellate courts find them warranted, but this is far from the overruling of the entire state system by the action of a single judge. And, of course, even this action is limited to federal laws, and federal constitutional rights. 28 U.S.C. § 2241.

interviewed, non-custodially, by Lt. Shea on July 9. He acknowledged being at a party the night of July 1, where the victim was last seen alive, and claimed that he had remained there until leaving with his cousin and a friend. Subsequently Shea was told that the defendant had borrowed car keys and had absented himself from the party for an hour following the victim's departure. On the morning of July 11 the defendant was requested to come to the police station. Shea testified, however, that he was not then a suspect, and only became such during the questioning. Early in this interview Shea noticed what appeared to be fingernail scratches on the defendant's neck. He asked what they were and defendant said that a Ruth Davis, a former girl friend, had scratched him at the party. Shea asked him to remove his shirt, and saw what appeared to be three more scratches on his back. It was at this point, according to Shea, that defendant became a suspect. Shea first testified before the district court that at this point he stopped the interrogation and gave the warnings. But, on cross-examination, he conceded that he had forgotten two other questions he had asked, *after* seeing the marks on defendant's back. He asked what the marks were, and defendant said that they, too, were fingernail scratches inflicted by Ruth Davis. He then asked defendant if he had borrowed a car, absenting himself from the party. Defendant denied this. Shea responded that he had information that he had, and only then gave warnings, complete, or incomplete, as the case may be.

Thereafter defendant was asked whether he was willing to take a lie-detector test. He said he was, and was taken to Boston. On his return to the police station he was told that he had done badly on the test. He was also told that Ruth Davis had been seen, had denied scratching him, and clearly had fingernails too short to make such scratches. He was again given warnings, following which he made a full oral confession.

Subsequently, after new and, concededly, full warnings, he signed a written confession.

The district court's conclusion that the entire July 11 interview was custodial, because defendant became a suspect as soon as Shea had received information contrary to his July 9 account of leaving the party with his cousin and friend, raises a serious question as to what constitutes *Miranda* custody. Defendant was not arrested on the morning of July 11. His July 9 visit had been brief, and at his own initiation. Shea then asked him to report anything he could find out, and he had apparently agreed. In view of the general breadth of the investigation the district court points to no reason for defendant to have attached particular significance to his being requested to return, or for believing forthwith that he was in custody. Custody, in the *Miranda* sense, must require at least some objective manifestation that the defendant was "deprived of his freedom of action in [a] significant way." *Miranda,* ante, 384 U.S. at 444, 86 S.Ct. at 1612. *See* United States v. Hall, 2 Cir., 1969, 421 F.2d 540, cert. denied 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398; Freije v. United States, 1 Cir., 1969, 408 F.2d 100, 103, cert. denied Saia v. United States, 396 U.S. 859, 90 S.Ct. 129, 24 L.Ed.2d 111.

Shea stated that after he discovered the scratches he would not have permitted the defendant to leave. It is reasonable to assume that defendant, too, realizing the possible significance of the scratches, recognized that they would have such an effect. We agree with the state court finding that this marked the commencement of *Miranda* custody.

Even with this amplification of the district court's findings, however, a problem of timeliness remains: two questions were asked after defendant was in custody. The later confessions, if the fruit of this earlier violation, must be excluded. The two questions,

while somewhat cumulative, produced exchanges adverse to defendant. They could have led him to a belief that he was trapped, and thus could have caused either the later confessions, or his agreement to proceed with a lie-detector test, the result of which in turn could have induced the confessions. Though it is impossible to be sure of the significance of these two exchanges, we agree that, as Justice Whittemore said in his dissent, the defendant "proceeded gradually into a state of inescapable involvement," 354 Mass. at 558, 238 N.E.2d at 530, in some part because of the illegal questioning. However, we need not decide whether these questions bore a sufficient causal relation to the confessions, owing to a further fault of much clearer impact.

## II

Following our remand, the district court found that the several warnings given during the day, including those immediately prior to the oral confession, were not substantially complete. We have reviewed the record. The reasons given by the district court for not accepting Shea's monotonously uniform testimony before it as to the full content of the warnings, as opposed to his state court testimony, varying, but always possessing some degree of incompleteness, which was confirmed by the two other officers, need not be repeated. We find the reasoning persuasive. *Miranda* was a new experience to the police forces of the country. While the police here had had the case explained to them orally, they had been given no written outline of its several details. We can understand that some might be unintentionally overlooked. The district court's finding that this was what occurred, until the point of actually signing a written confession was reached, must stand.

By this time, of course, it was too late. The written confession was clearly the fruit of the illegally obtained oral confession which immediately preceded it. Harrison v. United States,

1968, 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047; The Supreme Court, 1967 Term, 82 Harv.L.Rev. 63, 221–22 (1968); *see* Killough v. United States, 1962, 114 U.S.App.D.C. 305, 315 F.2d 241. All that intervened between the two confessions was a full *Miranda* warning, which of course did not warn the defendant that the first confession was invalid and could not be used against him. The use of both confessions invalidated the trial.

Affirmed.